# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

WAYMOND B. SMITH,
:
    Petitioner,                                Case No. 3:12-cv-274

:                District Judge Timothy S. Black
   -vs-                                         Magistrate Judge Michael R. Merz

Warden, Warren Correctional Institution,
:
    Respondent.

---

## REPORT AND RECOMMENDATIONS

---

This habeas corpus case is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

Petitioner was convicted in the Montgomery County Common Pleas Court in Case No. 2009 CR 2679/2 on one count of aggravated robbery with a deadly weapon and on a firearm specification. In Case No. 2009 CR 4063/1, he was aggravated robbery, aggravated burglary, aggravated murder, and tampering with evidence. He was sentenced to prison for thirty-seven years to life. Having pled no contest, he preserved his right to appeal denial of his motion to suppress. He raised that claim on appeal as well a claim his plea was involuntary. The Montgomery County Court of Appeals affirmed. *State v. Smith,* 2011 Ohio 3288, 2011 Ohio

App. LEXIS 2784 (Ohio App. 2nd Dist. June 30, 2011). The Ohio Supreme Court declined further review. *State v. Smith*, 2011 Ohio 6124, 2011 Ohio LEXIS 3015 (Nov. 30, 2011).

Mr. Smith then filed the instant habeas corpus petition raising three grounds for relief:

> **Ground One:** Petitioner denied due process and his right to a fair trial when conviction based upon trial court's failure to suppress involuntary confession.
>
> **Supporting Facts:** Petitioner confession or alleged confession was totally fabricated and police investigators have no video or audio evidence nor written statement to support their assertion that the alleged confession was voluntary.
>
> **Ground Two:** Petitioner no contest plea was involuntary and unconstitutional in violation of 14th Amendment right to due process.
>
> **Supporting Facts:** Because of Petitioner drug addiction and mental health consideration, Petitioner was in no position to enter a knowingly intelligent and voluntary plea he plead guilty to.
>
> **Ground Three:** Petitioner was denied effective assistance of Appealate [sic] counsel.
>
> **Supporting Facts:** Appealate [sic] failed to raise ineffective assistance of trial counsel. Namely, trial counsel failed to do the following:
> - Petitioner never received notice of witnesses to testify against Petitioner to effectively prepare for trial.
> - Trial lawyer did not explain formalities of no-contest plea.
> - Even though Petitioner regular [sic] takes psychotropic medication counsel never raised issue of side effects.
> - Petitioner competency should not have been determined by lawyer, judge or jury only certified mental health expert.
> - Petitioner was misled to believe being in vicinity of crime which have taken place is considered guilty of offense charge. Without even propable [sic] cause. An [sic] creditbity [sic] does not carry value of homeless being.

(Petition, Doc. No. 1.)

## Analysis

## Ground One

The United States Constitution requires exclusion from evidence at trial of an involuntary coerced confession. *Miranda v. Arizona*, 384 U.S. 436 (1966). This right was not violated in this case regardless of whether the confession was coerced because Mr. Smith pled no contest and his confession was never introduced in evidence.

Moreover, he presented this claim to the court of appeals which considered it under federal standards and held as follows:

> [*P16]   Smith's First Assignment of Error is as follows:
>
> [*P17]   "THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION TO SUPPRESS."
>
> [*P18]   Under this assignment of error, Smith contends that the trial court erred in denying his motion to suppress, because his confession to police was involuntary under the totality of the circumstances.
>
> [*P19]   Standards for reviewing decisions on motions to suppress are well established. In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (citation omitted). As a result, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id.
>
> [*P20]   In a suppression hearing, the State has the burden of proving by a preponderance of the evidence that the defendant's Miranda rights were knowingly, intelligently, and voluntarily

waived. *Colorado v. Connelly* (1986), 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473. Voluntary waiver and voluntary confession are separate issues, but "'the same test is used to determine both, i.e., whether the action was voluntary under the totality of the circumstances.'" *State v. Treesh*, 90 Ohio St.3d 460, 472, 2001 Ohio 4, 739 N.E.2d 749, *citing State v. Clark* (1988), 38 Ohio St.3d 252, 527 N.E.2d 844. "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards* (1976), 49 Ohio St.2d 31, 358 N.E.2d 1051, paragraph two of the syllabus.

[*P21]   We do not reach the issue of totality of the circumstances, however, unless we find that the police used a coercive tactic. *State v. Perez,* 124 Ohio St.3d 122, 131, 2009 Ohio 6179, ¶71, 920 N.E.2d 104. *Accord State v. Swopes*, Montgomery App. No. 24044, 2011 Ohio 2072, ¶34.

[*P22]   Smith argues that the police coerced his waiver, due to "overreaching." In support of this contention, Smith alleges that the arresting officers told him that he was "breathing his last air," and that Gaier said that there would be a lethal injection in the case. There is no proof, however, that these remarks occurred. When asked about the remarks in the suppression hearing, Gaier denied any knowledge of the arresting officer's remarks, and denied saying anything about a lethal injection.

[*P23]   In advancing the overreaching argument, Smith also points to evidence that he was a heroin user. There is no evidence, however, that Smith was under the influence of drugs when he was interviewed. The only evidence that was elicited is that Smith said he was a heroin user, and had been using heroin at the time of the alleged robberies, which occurred several months earlier. Gaier indicated that Smith appeared normal and answered questions logically while he was being interviewed.

[*P24]   Coercive tactics can include matters like threats to arrest members of a suspect's family, or physical abuse, or deprivation of food, medicine, or sleep. *Perez*, 124 Ohio St. 3d 122, 2009 Ohio 6179, at ¶72, 920 N.E.2d 104; *State v. Clark* (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844. There is no evidence that coercive tactics

occurred in the case before us.

[*P25] Smith also relies heavily on a decision by the Fourth District Court of Appeals, which affirmed the suppression of statements where a deputy made repeated misrepresentations and used other coercive tactics against a defendant who had low mental aptitude. *See State v. Baker* (Nov. 2, 1995), Athens App. No. 94CA1644, 1995 Ohio App. LEXIS 4941. Again, no evidence was submitted in the case before us to indicate that the police used coercive tactics or misrepresentation, and there is no evidence that Smith had a low mental aptitude. In fact, the evidence at the plea hearing indicates that Smith was 30 years old and had reached his junior year in college.

[*P26] Finally, even if Detective Gaier had accused Smith of lying, admonitions to suspects to tell the truth are not coercive. See, e.g., *State v. Knight*, Clark App. No. 04-CA-35, 2008 Ohio 4926, ¶111.

[*P27] We note that the trial court accepted Gaier's testimony that Smith appeared coherent and normal and did not appear under the influence of any drugs. The court concluded that Smith had expressly waived his rights with full awareness of the implications. The trial court further concluded that Smith did not suffer any unconstitutional deprivation when he met with detectives.

[*P28] The trial court's findings are supported by competent, credible evidence. The only witnesses were police officers, and Detective Gaier testified that Smith appeared normal, spoke logically, and waived his rights after being fully advised.

[*P29] Smith's First Assignment of Error is overruled.

*State v. Smith*, 2011 Ohio 3288 (June 30, 2011).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131

S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). In this case the state court of appeals decided this case under federal constitutional law, citing either federal case law or state case law embodying federal constitutional principles. Having examined the state court's opinion, the Magistrate Judge finds it is neither contrary to nor an objectively unreasonable application of clearly established United States Supreme Court precedent and is therefore entitled to deference.

The First Ground for Relief should therefore be dismissed with prejudice.

**Ground Two**

In his second Ground for Relief, Petitioner asserts his no contest plea was involuntary. This is also a claim cognizable under the federal constitution which the state court of appeals decided on the merits. The court held:

> [*P30] Smith's Second Assignment of Error is as follows:
>
> [*P31] "APPELLANT'S PLEAS WERE NOT OFFERED KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY AS REQUIRED BY LAW."
>
> [*P32] Under this assignment of error, Smith contends that his pleas were not offered knowingly, intelligently, and voluntarily, because the medications he was taking affected his ability to understand the implications of tendering his plea, and because he had not taken one of several prescribed medications in the morning before his plea.
>
> [*P33] A defendant's plea in a criminal case "must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v.*

*Engle* (1996), 74 Ohio St.3d 525, 527, 1996 Ohio 179, 660 N.E.2d 450. With regard to plea requirements, Crim.R. 11(C)(2) provides that:

[*P34] "In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

[*P35] "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

[*P36] "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

[*P37] "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

[*P38] In the case before us, the trial court properly addressed the defendant regarding the above issues. With regard to medication, the following colloquy occurred:

[*P39] "THE COURT: Are you currently under the influence of any drugs, alcohol or medication?

[*P40] "THE DEFENDANT: I take medication.

[*P41] "THE COURT: What medication do you take?

[*P42] "THE DEFENDANT: I take three different medications, but since I've been in here, I can only get two.

[*P43] "THE COURT: I'm sorry?

[*P44]   "THE DEFENDANT: Three. Three different medications, but since I've been in here, I've only been allowed to get two of them.

  [*P45]   "THE COURT: All right. Now, I have to make sure that the record is clear. What are the medications? When did you last take them?

  [*P46]   "THE DEFENDANT: I take Ativan every — every day, twice a day. Klonopin's in the morning. Klonopin's at night. I'm supposed to take trazodone, tramodol, Prefrin, Cymbalta three times a day, every day. That's what my body's used to.

  [*P47]   "THE COURT: All right. Now, the fact that — and you took your medication this morning?

  [*P48]   "THE DEFENDANT: No. They just — they didn't do a medicine call for us.

  [*P49]   "THE COURT: All right.

  [*P50]   "THE DEFENDANT: I haven't had it today.

  [*P51]   "THE COURT: All right. So you're not —

  [*P52]   "THE DEFENDANT: I'll get them when I go back.

  [*P53]   "THE COURT: The key question is, when we ask, are you under the influence of any drugs, alcohol  [**14] or medication, is you're not feeling high, or you're not —

  [*P54]   "THE DEFENDANT: I'm not. I don't — I'm not — I'm okay.

  [*P55]   "THE COURT: All right. So you're — so the answer to the question is, to the question, are you under the influence of any drugs, alcohol or medication should be no. Is that correct? And I'm asking you because —

  [*P56]   "THE DEFENDANT: I don't have any alcohol. I take medication that is prescribed by the doctor.

[*P57] "THE COURT: All right. But listen to my question. The question is, are you under the influence? You can take medicine.

[*P58] "THE DEFENDANT: I take it at night, so —

[*P59] "THE COURT: Listen to the question.

[*P60] "THE DEFENDANT: Sorry. I don't —

[*P61] "THE COURT: Okay. That's why I want you — I'm asking it. It is a precise question and I need a precise answer. You can take medicine. The question is, are you under the influence of it, meaning, are you high? Do — are you unable to know where you are?

[*P62] "THE DEFENDANT: No, ma'am.

[*P63] "THE COURT: All right. So are you under the influence?

[*P64] "THE DEFENDANT: No, ma'am.

[*P65] "THE COURT: All right. Very well. Thank you. Are you — do you have any mental or physical problems that would prevent you from understanding what's going on?

[*P66] "THE DEFENDANT: Well, yes. That, I know so.

[*P67] "THE COURT: All right. Again, what are the problems that you've been diagnosed with?

[*P68] "THE DEFENDANT: I'm bipolar schizophrenic, you know.

[*P69] "THE COURT: All right. So are you on medication for them?

[*P70] "THE DEFENDANT: Yes.

[*P71] "THE COURT: All right. So, at this point, are you hearing voices?

[*P72] "THE DEFENDANT: No, ma'am.

[*P73]  "THE COURT: Is there anything that would prevent you from understanding what's going on? You've noted to me that you have problems, and we'll accept that. Is there anything about those problems that would prevent you from understanding that we're going through with the plea at this point?

[*P74]  "THE DEFENDANT: If I didn't understand, just that you know, I would —

[*P75]  "THE COURT: All right. Let's go off the record. Well, you go talk to your attorney.

[*P76]  "THE DEFENDANT: Yeah, man. Just to get — just as well to get it over with.

[*P77]  "THE COURT: No.

[*P78]  "(Counsel Confer)

[*P79]  "* * * *

[*P80]  "THE COURT: All right. Do you have any mental or physical problems that would prevent you from understanding what's going on?

[*P81]  "THE DEFENDANT: No." Transcript, pp. 72-75.

[*P82]  The plea hearing took place at 9:30 a.m., and Smith had missed only his morning dose of medicine. The record does not demonstrate that Smith was bewildered, as appellate counsel suggests, or that he was incapable of fully understanding the proceedings or the consequences of his pleas. Compare the colloquy and confusion of the defendant in State v. Nickell, Wood App. No. WD-07-015, 2008 Ohio 1571, ¶19-103. In *Nickell*, the Sixth District Court of Appeals observed that:

[*P83]  "Thus, even with the repetitive coaxing and questioning, appellant was unable to sufficiently focus on and comprehend the nature and objectives of the proceedings. Many of appellant's answers were non-responsive, indicating that she clearly did not understand that under a no contest plea, she would likely be found guilty, or even why she had been charged with the offense.

[*P84] "Even the court itself expressed that it had difficulty discerning whether appellant's inability to comprehend was due to lack of education or mental health issues. Nothing in the record indicates that appellant was 'faking it,' nor did the trial court make such a finding. Instead, we conclude that appellant's ability to understand or to become 'educated' as to the legal issues involved was inextricably intertwined with her mental health and medication issues. Consequently, we conclude that the record shows that, due to her mental illness and somewhat limited cognitive abilities, appellant was unable to fully participate in her defense or to appreciate the ramifications of the no contest plea and subsequent conditions of sentencing." *Id*. at ¶117-118.

[*P85] In addition, the Sixth District Court of Appeals noted that the defendant "continued to protest her innocence during both the plea and sentencing hearings, offering explanations which contradicted the state's evidence, and asking that the court talk to her doctor." *Id*. at ¶129. In contrast, Smith's statements at the plea hearing indicate that he was well aware of the matters itemized in Crim. R. 11(C)(2).

[*P86] Accordingly, Smith's Second Assignment of Error is overruled.

*State v. Smith*, 2011 Ohio 3288 (June 30, 2011).

Once again, as with the First Ground for Relief the state court of appeals' decision is consistent with federal law. Under federal law, plea of guilty or no contest is valid if it is entered voluntarily and intelligently, as determined by the totality of the circumstances. *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984). The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case. *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

A plea of guilty entered by one fully aware of the direct

> consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970). Where a court has scrupulously followed the required procedure under Ohio R. Crim. P. 11, "the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986), quoting *Moore v. Estelle*, 526 F.2d 690 (5th Cir. 1976).

Because the state court decision is neither contrary to nor an objectively unreasonable application of clearly established United State Supreme Court law, it is entitled to deference. The Second Ground for relief should therefore be dismissed with prejudice.

### Ground Three

In his Third Ground for Relief, Petitioner asserts that his appellate counsel was ineffective for failing to claim that his trial attorney was ineffective in five different ways. In his Petition he does not indicate that he ever raised these claims in any Ohio court.

In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

501 U.S. at 750; *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U. S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

Ohio provides a mechanism for raising claim of ineffective assistance of appellate counsel: a motion for reopening the appeal under Ohio R. App. P. 26(B). However, that Rule requires that the filing occur within ninety days of the final judgment on appeal or, in this case, by September 28, 2011. Because no application for reopening was filed within the time allowed by rule, Petitioner has procedurally defaulted in presenting his claim of ineffective assistance of appellate

counsel to the state courts and is barred by that default from presenting them here. Therefore the Third Ground for Relief should be dismissed.

**Conclusion**

All three Grounds for Relief are without merit or barred from merit consideration by Petitioner's default. Therefore the Petition should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and this Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

August 13, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).